**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RYAN W. ANTALEK,**

    **Petitioner,**

    v.                                                  **CASE NO. 25-3114-JWL**

**STATE OF KANSAS,**

    **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a pretrial detainee at the Sedgwick County Jail in Wichita, Kansas, proceeds pro se. On June 27, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 3) ("MOSC") screening the Petition (Doc. 1) under Rule 4 of the Rules Governing Habeas Corpus Cases, foll. 28 U.S.C. § 2254, and directing Petitioner to show good cause, in writing, why this matter should not be dismissed under the abstention doctrines set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Ex Parte Royall*, 117 U.S. 241 (1886), as well as for failure to exhaust state court remedies.

Petitioner filed two responses (Docs. 4 and 5) to the MOSC. In his responses, Petitioner continues to assert that he has been deprived of the right to petition, object, or challenge issues and been subjected to "extraordinary delay" in his pretrial criminal proceedings, in violation of the Constitution. (Doc. 4, at 2, 3.) He argues that this subjects him to "irreparable injury" that is "both great and immediate" as required by *Younger* to overcome abstention. *Id.* at 3. He further asserts that these deprivations show a "clear 'reason why the state court may not resolve the constitutional question in the first instance'" as required by *Ex Parte Royall*. *Id.* He then proceeds to cite cases discussing the right of access to the courts. *Id.* at 3-4, 7, 8-9.

1

Petitioner alleges that his motions filed in state criminal proceedings "have been ignored, refused to be heard or significantly delayed showing a prejudice by the courts and abuse of process." *Id.* at 4. He lists three motions that took either five or three months to be heard and claims that the prosecution is treated differently by the state court. *Id.* at 5. Once the motions were taken up by the state district court, Petitioner claims he was not given a chance to make his arguments, and all three motions were denied. *Id.* at 7. Petitioner states that he has also filed two petitions for habeas corpus in state court, one filed pro se on March 12, 2025, and the other filed by his attorney on March 17, 2025, and both have been ignored or denied. *Id.* at 6, 7.

Petitioner also argues that the state court's actions meet the standard for bad faith discussed in *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999). He again refers to the motions the state court refused to hear although filed three months prior, while the court allowed the prosecution's motion to endorse, which was only filed two weeks prior. (Doc. 4, at 9.) Petitioner says that "[t]his shows bad faith." *Id.*

In addition, Petitioner objects to the state court practice of scheduling "status" hearings "that are scheduled with the intention and knowing by the court will be continued." *Id.* at 10. Petitioner argues that these "status" hearings "have never been legislated, nor defined by the Legislature" and "have become a routine mechanism used by the court to overstep people's constitutional right and statutory right to a speedy trial." *Id.* He cites case law discussing the right to a speedy trial (*id.* at 10-11) and Kansas statutes that do not mention "status hearings" (*id.* at 11-12).

The United States District Courts are authorized to grant a writ of habeas corpus to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas Corpus Rule 4 requires the Court to undertake a preliminary review

of the petition and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . the judge must dismiss the petition." Habeas Corpus Rule 4.

As explained in the MOSC, the United States Supreme Court has long held that federal courts generally should not exercise their power to discharge a person being detained by a state for trial on a state crime, *even where the person alleges that the detention is unconstitutional*. *Ex Parte Royall*, 117 U.S. 241 (1886). In 1886, the United States Supreme Court described some very limited circumstances in which such intervention might be proper, such as when the individual is in custody for an allegedly criminal act done as required by federal law or federal court order, when the individual is a citizen of a foreign country and is in state custody for an allegedly criminal act done under the authority of that foreign country, when the matter is urgent and involves the United States' relations with foreign nations, or when there is some reason why the state court may not resolve the constitutional question in the first instance. *Id.* at 251–52. Otherwise, federal courts must abstain from interfering with the process of state courts. *Id.* at 252 (stating that federal courts' non-interference with state courts "is a principle of right and law, and therefore of necessity").

Nearly a century later, the United States Supreme Court reaffirmed that principles of comity dictate that generally a federal court is not to intervene in ongoing state criminal proceedings unless "irreparable injury" is "both great and immediate." *See Younger v. Harris*, 401 U.S. 37, 46 (1971) (citation omitted). Under *Younger*, federal courts must abstain when "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

If the three circumstances are present, federal abstention is mandatory, unless extraordinary circumstances require otherwise. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009) (quoting *Amanatullah*, 187 F.3d at 1163). Two varieties of "extraordinary circumstances" exist: "(1) where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action and (2) where the state law or regulation to be applied is flagrantly and patently violative of express constitutional prohibitions." *Id.* at n.4 (citations and internal quotations omitted). However, a petitioner has a "heavy burden" to overcome *Younger* abstention by setting forth "more than mere allegations of bad faith or harassment." *Amanatullah*, 187 F.3d at 1165 (citation omitted).

Although "*Younger* and *Ex Parte Royall* are related doctrines" the Tenth Circuit has stated that *Younger* "addressed a federal court's equitable power to issue an injunction enjoining state proceedings" while *Ex Parte Royall* "involved a request for habeas relief." *Kirk v. Oklahoma*, 2021 WL 5111985, at *2 (10th Cir. Nov. 3, 2021) (unpublished). In finding that *Ex Parte Royall* provided "more specific authority for the dismissal," the Tenth Circuit held that:

> In *Ex Parte Royall*, the Supreme Court held that federal courts have habeas corpus jurisdiction to discharge a state-court pretrial detainee from custody on the basis that his detention violates the constitution. But the Court further concluded that a federal court should not exercise its discretion to exert that power except in very limited circumstances and should instead allow the state court to pass upon constitutional questions in the first instance. Acknowledging exceptions to this rule, the Court pointed to 'cases of urgency[ ] involving the authority and operations of the [federal] government [or] the obligations of this country or its relations with foreign nations.' The Supreme Court has also sanctioned federal habeas relief in a pretrial case where, rather than seeking to litigate a federal defense to a criminal charge, the habeas applicant sought to compel the state to bring him to trial. *'[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts.' Id.*

4

*Kirk*, 2021 WL 5111985, at *2 (internal citations omitted) (emphasis added). The Tenth Circuit concluded that the district court did not err by abstaining from interfering in petitioner's state-court criminal proceedings because "[h]is is not a 'case[ ] of urgency' involving the imposition of state custody for commission of an act done in pursuance of federal law or under the authority of a foreign state . . . [n]or is he seeking to compel the state to bring him to trial." *Id*.

Similarly, Petitioner's case is not within the narrow category of cases for which *Ex Parte Royall* contemplates federal-court intervention in state-court criminal proceedings by way of a writ of habeas corpus. He does not allege that the state is detaining him for committing an act done in pursuance of federal law or under the authority of a foreign government, nor does he seek to compel the State of Kansas to bring him to trial. Rather, Petitioner asks this Court to dismiss his state criminal charges. (Doc. 1, at 7.)

The instant Petition does not allege the type of circumstances under which *Ex Parte Royall* allows federal court intervention. Moreover, the three conditions in *Younger* appear to be satisfied with respect to Petitioner's current criminal case in the District Court of Sedgwick County, Kansas. The criminal case against Petitioner is ongoing; the State of Kansas has an important interest in prosecuting crimes charging the violation of Kansas laws; and the state courts provide Petitioner the opportunity to present his challenges, including any federal constitutional claims, whether in the district court or, if necessary, on appeal or in further proceedings.

"To establish extraordinary or special circumstances and overcome abstention, [a petitioner] must be facing an irreparable injury that is both great and immediate." *Hodson v. Reams*, 2017 WL 6550694, at *3 (D. Colo. June 20, 2017), *denying cert. of appealability* 729 F. App'x 661 (10th Cir. 2018) (citing *Younger*, 401 U.S. at 46). "The exceptions to *Younger* provide only for a 'very narrow gate for federal intervention.'" *Id*. (citing *Phelps v. Hamilton*, 59 F.3d

1058, 1064 (10th Cir. 1997)). A petitioner "may overcome the presumption of abstention 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown.'" *Id.* (citations omitted).

"'[I]rreparable injury" significant enough to permit federal court interference must pose a 'threat to the plaintiff's federally protected rights ... that cannot be eliminated by his defense against a single criminal prosecution.'" *Winn v. Cook*, 945 F.3d 1253, 1259 (10th Cir. 2019) (quoting *Younger*, 401 U.S. at 46). "[T]he cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Younger*, 401 U.S. at 46. "If there is no injury 'other than that incidental to every criminal proceeding brought lawfully and in good faith,' there is no irreparable injury." *Winn*, 945 F.3d at 1259 (quoting *Younger*, 401 U.S. at 46). "In other words, an error by the state court does not create an irreparable injury simply because the defendant must proceed through the tainted trial before obtaining relief—relief that may well entail a second trial." *Id.*

The "irreparable injury" asserted by Petitioner is the alleged deprivation of the right to petition, object, or challenge issues and "extraordinary delay" in his pretrial criminal proceedings. (Doc. 4, at 2, 3.)   However, Petitioner has not shown that any error by the state court cannot be corrected through a post-trial motion or an appeal.  As for the delay and alleged violation of his speedy trial rights, because Petitioner seeks dismissal of the charges against him rather than an order requiring that he be brought to trial, he does not face an irreparable injury sufficient to overcome the abstention requirement. *See Winn*, 945 F.3d at 1261.

Petitioner also asserts that the state court has been acting in bad faith.  His support for this assertion is primarily what he views as unfair treatment of his motions and preferential treatment

of the prosecution. Similarly, in *Amanatullah,* the petitioner argued that the state court's refusal to consider his amended complaint demonstrated bad faith. *Amanatullah*, 187 F.3d at 1165. The Tenth Circuit rejected that argument, finding the petitioner had provided "no evidence" but merely allegations of bad faith where the state court did not abuse its discretion in failing to consider the amended complaint. *Id.* Likewise, in *Kirk*, the petitioner contended that the state court was not accommodating pro se litigants, he had no access to a law library, the state judge had a conflict of interest, the jail denied him access to lawyers, the prosecutor used falsehoods to invoke the death penalty against him, no state statute applied to the unique circumstances of his case, and systemic problems with the state courts violated his constitutional rights. *Kirk*, 2021 WL 5111985, *3. The Tenth Circuit found that these assertions were conclusory and insufficient to show that charges were brought against the petitioner in bad faith and overcome abstention under *Ex Parte Royall*. *Id*. Petitioner has not provided anything more than allegations of bad faith and has certainly not shown that his prosecution was undertaken without hope of obtaining a valid conviction.

Thus, the Court finds that *Ex Parte Royall* and *Younger* require it to decline to interfere in the ongoing state court proceedings in the District Court of Sedgwick County, Kansas. Petitioner has failed to show good cause why this matter should not be dismissed under the abstention doctrines set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Ex Parte Royall*, 117 U.S. 241 (1886). Therefore, the Petition is dismissed without prejudice.

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA") upon entering a final adverse order. The Tenth Circuit has held that this requirement also applies to petitions brought under 28 U.S.C. § 2241. *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (holding that the COA requirement applies "whenever a state prisoner habeas petition relates to matters flowing from a state court detention

order").

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court concludes that its procedural ruling in this matter is not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

**Dated August 21, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
